IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 17, 2017

**STATE OF TENNESSEE v. GEORGE MARTIN ZICKEFOOSE**

**Appeal from the Circuit Court for Blount County**
**No. C-24164        Tammy M. Harrington, Judge**

_____

**No. E2016-01845-CCA-R3-CD**

_____

The Defendant, George Martin Zickefoose, pleaded guilty to vandalism valued between $1,000 and $10,000, theft of property valued between $1,000 and $10,000, and burglary, with the trial court to determine the sentences. At the sentencing hearing, the trial court ordered concurrent four-year sentences for each count for an effective four-year sentence in the Tennessee Department of Correction. The Defendant appeals, asserting that the trial court erred when it denied him an alternative sentence. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Michael R. Tabler, Knoxville, Tennessee, for the appellant, George Martin Zickefoose.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ashley J. Salem, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's participation, along with two other men, in the burglary, theft, and vandalism of Porter Elementary School in December 2015. The Defendant waived his right to presentment to the grand jury and, in April 2016, entered a plea of guilty to theft, vandalism, and burglary, all Class D felonies. The parties agreed that the Defendant was to be sentenced as a Range I, standard offender with a sentencing range of two to four years for each count. The trial court was to determine the length and manner of service following a sentencing hearing.

At the sentencing hearing, the parties stipulated that the restitution would be $8,494.56 for the vandalism conviction and $5,185.00 for the burglary conviction. The restitution was to be "joint and several with his co-defendant[s]." At the request of the State, the trial court entered into evidence the presentence report, a copy of a January 17, 2014 misdemeanor conviction, copies of two March 4, 2014 misdemeanor drug convictions, and a copy of a July 15, 2015 misdemeanor resisting arrest conviction. The trial court also entered certified copies of two July 15, 2015 violations of probation.

Detective Joey Parton, a Blount County Sheriff's Department detective, testified that during the night of December 10, 2015, and into the morning hours of December 11, the Defendant participated in the vandalism, burglary and theft of Porter Elementary School. Detective Parton stated that the considerable damage to the school resulted in classes being cancelled on Friday, December 11, 2015. He said there was "extensive glass breakage" throughout the school buildings and described the school as looking like "a war zone" with glass scattered all over the hallways and classrooms. He said that there were televisions damaged and "the clinic" was "ransack[ed]." The school had been collecting stocking stuffers for underprivileged children and candy was strewn throughout one of the hallways. The investigation revealed empty wrappers and the consumption of food outside the cafeteria freezer and in the dining hall. Through Detective Parton, the State introduced photographs of the damage to Porter Elementary School.

Detective Parton interviewed the Defendant about these crimes, and the Defendant admitted his involvement. The Defendant specifically admitted entering the school building and taking "[s]everal laptop computers, some Apple TV's, some food from the cafeteria" and additional electronic items. Detective Parton described the Defendant as cooperative during the interview, offering assistance in locating some of the stolen items. The Defendant admitted that he and his co-defendants had consumed "a large amount of alcohol" and expressed remorse for his involvement. Detective Parton confirmed that some of the stolen items were recovered. Detective Parton stated that initially one of the co-defendants was not forthcoming about the crimes; however, the Defendant spoke with this co-defendant and encouraged him to be honest with law enforcement.

The Defendant testified that he was twenty-two years old at the time of these crimes. The Defendant said that he was adopted when he was two-years-old. He grew up in Walland, Tennessee where he was "the only minority for a great while." This caused him to feel that he did not "fit in," and he began acting out. He first became involved in the juvenile system at age twelve based upon truancy issues. Later, he became involved with marijuana, which ultimately resulted in his placement in State custody when he was fourteen years old. From age fourteen to seventeen, the Defendant

complied with his probation requirements while in State custody. He described his living situation as "very structured" with a case manager he reported to and routine drug screens.

The Defendant moved back home and, after turning eighteen, he moved into a residence with three friends who were also eighteen. During this time, he was convicted of marijuana possession and ordered to serve a probation sentence. The Defendant agreed that he had committed "numerous violations" of his probation sentence before serving the sentence.

About the instant offenses, the Defendant testified that he and his co-defendants drank approximately a case of beer each. He also admitted that there was marijuana in his system as well. He and his co-defendants were driving around town and ended up at the elementary school playground drinking. He stated that there was not a plan to break into the school but, at some point, one of his co-defendants broke a window and entered the school building. The Defendant did not enter the school immediately but eventually entered to look for the co-defendants. As he wandered the school, he noticed electronics and so "broke windows and [ ] took them."

The Defendant testified that he did not realize the extent of the damage until he watched the news the following day. He said that he "immediately regretted it" and that he felt "terrible." The Defendant stated that he knew what he had done was wrong, so he fully cooperated with the police, taking responsibility for his actions. The Defendant confirmed that he had been in jail for eight months awaiting the resolution of this case. He confirmed that he had waived his right to a preliminary hearing and his right to indictment by a grand jury. The Defendant asked the trial court to order a sentence of split confinement to allow him to enroll in a treatment program.

The Defendant conceded that he was no longer intoxicated when he sold the school's property after this incident. He also admitted that he had never successfully completed a probation sentence and that his last release from a probation violation was two months before the Porter Elementary School burglary.

After hearing this evidence, the trial court made the following findings:

This case has come on for sentencing hearing, the Defendant having previously pled guilty on April the 4th, 2016, to three separate charges, each being class D felonies, vandalism, theft and burglary. At that time, he waived his right to trial and entered a plea of guilty. In determining the appropriate sentence for these offenses, the Court has considered the evidence presented, not only at the stipulation at the plea as well as the

3

sentencing hearing. I have reviewed the presentence report; the exhibits that have been tendered as part of this hearing; the principles of sentencing and arguments made as to sentencing alternatives; the nature and characteristics of the criminal conduct involved and the evidence and information offered by the parties on mitigating and enhancement factors. I've heard not only your argument here today, but each of you did file a pleading related to enhancement and mitigating factors. As well as the court periodically does review information provided by the AOC as to sentencing practices. I've considered the statement made by the Defendant. Not only the statement made to the detective, the statement as part of the presentence report as well as the statement he made on his own here today as far as sentencing. And I have also considered the Defendant's potential for rehabilitation or treatment.

The Defendant has pled guilty, an open plea, as a range one standard offender. That was by stipulation. So, the Court must first look to the length of sentence and then has to look at also method and manner. In looking at the sentencing guidelines, the Court has looked through and finds the following enhancement factors: The Defendant does have a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. He does not have any prior felony convictions; however, the presentence report as well as the testimony here today does indicate several misdemeanor offenses as well as violations that have ensued from those from the time he was 18 until 23. I'm not going to go over those individually. They are part of the record.

. . . .

I further find that the amount of damage to property was particularly great in this case. It's not even as much the financial as well as -- well, it is financial. Those were large amounts. He's pled guilty to over $1,000, but the amounts of restitution stipulated to are $8,000 and $5,000. As well as, in reviewing the exhibits and the photographs, it is not one area of a school. It is not isolated or confined to one particular part. It was extensive, it was widespread. It was the cafeteria, it was classrooms, it was [the] office. It was from one end to the other, to the point that it impacted the school so much that the school did have to close. And thankfully it was a Friday so that I'm assuming their cleanup continued over the weekend to where the children could go back on Monday. . . . [I]n reviewing the exhibits, there's no way to get around that the damage wasn't great. I mean, that's just -- it is. And so I do find that as an enhancement factor.

4

In looking at number eight, the Defendant before trial or sentencing has failed to comply with the conditions of a sentence involving release in the community. [W]ell, as far as this case, the Defendant has been confined for the entire period before sentencing or trial. The Defendant does have a history as far as other cases. . . . So, as far as number eight, I don't find that he's had any violations related to this case. I do find that in previous cases in the past, he has established a history of non-compliance involving cases where he was released into the community. . . . And those are the only enhancing factors that the Court is going to find.

In looking at mitigating factors, . . . it does appear that number ten does apply, that the Defendant assisted the authorities in locating or recovering any property or person involved in the crime. So, therefore, I do find that that enhancement factor does apply. It was uncontroverted. The detective very candidly stated that they were able to recover some property, not all of it, as far as based upon his help.

As far as the mitigating factor offered, the Defendant's criminal conduct neither caused nor threatened serious bodily injury, they're property crimes to a certain extent that involved vandalism, theft, and burglary. But they are property crimes that occur in a place where within a few hours . . . children were going to be present. And I go back to these exhibits of the broken glass and the damage. Granted, the school intervened and the kids . . . weren't allowed to go in. That one is a tough one. And, like I said, there's not a lot of guidance provided on being able to look at the factual basis for these.

So, at this time, I'm -- I just don't find that enough proof was presented to establish that as a mitigating factor. And I'm just going to state it as simply as that. But I do find that he did assist the authorities in recovering property.

So, in looking at that and going through the analysis of the enhancement and the mitigating factors, what really stands out for the Court is his criminal history. And at this point, I'm talking about the criminal history that involves from the time he was 18 and the fact that he's just not been able to experience a significant period of time court-free, crime-free, probation-free, sentence-free -- I mean, however you want to put it, I am disturbed by the fact that when you finally are, to a certain extent, held accountable, that you're ordered to serve a sentence and that you're ordered

5

to flatten it, and then two months later we have this act. And that really causes me just, I think, the most concern.

. . . .

So then in looking at probation considerations, I have considered the presentence report; physical and mental condition and social history; the facts and circumstances surrounding the offense -- and I've touched upon that; your prior criminal history – I've talked about that; your previous actions and character. And let me say this: I appreciate what I think is your remorse. I appreciate and I am in some way I find it very interesting the history that you have described, the fact that you did not complete your education, the fact that you do not really have any employment history that I would consider appropriate to speak of, but yet you're very articulate, you're very well spoken. You come across as somebody that can do better than what you've done the last five years. So, whether or not it appears that you will abide by the terms of probation is something the Court has to look at. And in looking at that, do I look at your actions or do I look at your words. And that's really what all of this boils down to. Do I look at actions or do I look at words. And whether or not interest of society would be protected from possible future criminal conduct, as it stands right now that's a huge issue. Measures less restrictive than confinement have been applied unsuccessfully. Whether or not probation, full probation would depreciate the seriousness, in this case, with your criminal history, I think that it would. You've already served eight months to a certain extent. And then I have to look at whether confinement is necessary to protect society by restraining someone who has a long history of criminal conduct, whether it would be as a deterrent to others, whether less severe sentences should be imposed. And I've reviewed all of the sentencing considerations.

Based upon everything that's been presented at this sentencing hearing, I am going to sentence you to four years as a range one standard offender. That is the maximum within your range. I am going to order restitution as stipulated to by the parties. And I am going to order that based upon all the facts and circumstances and the information presented at sentencing, I am going to order that he serve this four years in the Tennessee Department of Corrections [sic].

It is from this judgment that the Defendant appeals.

## II. Analysis

6

On appeal, the Defendant argues that the length of his sentence is excessive and that the trial court should have ordered split confinement. The State responds that the trial court properly exercised its discretion in ordering the Defendant to serve his four-year sentence in confinement, based upon the circumstances of the offenses, the Defendant's history of criminal conduct, and failure to comply with previous sentences involving probation. We agree with the State.

Appellate review of sentences is under the abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this Court must presume the sentence to be reasonable. *Bise*, at 704-07. As the *Bise* Court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708. We are also to recognize that the defendant bears "the burden of showing that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The Defendant asserts that the trial court erred when it failed to apply the mitigating factor that his conduct did not cause or threaten serious bodily injury to reduce his sentence. T.C.A. § 40-35-113(1) (2014). We agree that there was no evidence that

7

the Defendant's conduct caused or threatened serious bodily injury; however, the misapplication of a mitigating factor "does not invalidate or alter [a] sentence" in cases where the trial court's decision otherwise complies with the purposes and principles of sentencing. *Bise*, 380 S.W.3d at 706. The record illustrates that the trial court considered all the sentencing factors and the relevant facts and circumstances of the case. The trial court's "within-range" sentence is presumed reasonable unless the Defendant can show an abuse of discretion. Here, the Defendant does not challenge the applicability of the three enhancement factors found by the trial court, and their application is supported by the record. Because the trial court complied with the Sentencing Act and the proffered reasons for imposing the sentence are supported by the record, we cannot conclude that the trial court abused its discretion by sentencing the Defendant to serve four years in the DOC, the maximum sentence allowed for a Range I, D felony conviction.

The Defendant also argues that the trial court should have ordered a sentence involving split-confinement. Although the Defendant in this case is eligible for probation, the burden is upon the Defendant to show that he is a suitable candidate for probation. T.C.A. § 40-3-303(b); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the Defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances . . . including a defendant's background." *State v.* Ashby, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

8

T.C.A. § 40-35-103(1). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014).

The trial court in this case relied on subsections (A) and (C) of Tennessee Code Annotated section 40-35-103(1). In ordering the Defendant to serve his sentence in incarceration, the trial court specifically noted the Defendant's lengthy criminal history. The trial court also noted that there "have been less restrictive measures, other than confinement" applied to the Defendant, and it concluded that there is a substantial risk that the Defendant would commit another crime if granted probation.

The record shows that the trial court considered the relevant sentencing considerations, and the Defendant has not established that the trial court abused its discretion in denying alternative sentencing or "otherwise overcome the presumption of reasonableness afforded sentences [that] reflect a proper application of the purposes and principles of our statutory scheme." *See Caudle*, 388 S.W.3d at 280. The Defendant is not entitled to relief.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE